[No. 47938-5-I.   Division One.   December 24, 2001.]

BRYON D. HALL, ET AL., *Appellants*, v. STATE FARM FIRE & CASUALTY COMPANY, *Respondent*.

*Russell M. Aoki, Anthony D. Shapiro, Benjamin A. Schwartzman*, and *Jeffrey C. Grant*, for appellants.

616

*Michael S. Rogers* (of *Reed McClure*), for respondent.

COLEMAN, J. — Bryon Hall appeals the trial court's dismissal of his claim for insurance coverage against State Farm. Hall brandished a handgun during a verbal confrontation with Eric Truong. Truong grabbed for the gun and was shot in the struggle. Hall's insurance policy with State Farm excluded injuries resulting from "willful and malicious acts." A jury found that there was an "accident" and that no injury occurred that was expected or intended by Hall. But the jury also found that Truong's injury was the result of willful and malicious acts by Hall. The trial court subsequently dismissed Hall's claim, ruling that the jury's verdict had the legal effect of denying coverage under the policy.

On appeal, Hall argues that the trial court erred by failing to instruct the jury that the firing of the gun, not the acts leading up to it, was the act the jury should consider in determining whether Hall acted "willfully and maliciously" under the policy exclusion. Hall also argues that the jury's verdict was inconsistent because the shooting could not be both accidental and the result of a willful and malicious act. Further, Hall contends that the trial court erred by failing to give a number of other instructions and by submitting a flawed special verdict form to the jury. State Farm cross-appeals, claiming the willful and malicious acts exclusions barred coverage as a matter of law.

State Farm's policies unambiguously deny insurance coverage for injuries that result from willful and malicious acts of an insured. The court, therefore, did not err by instructing the jury with the language contained in the policy exclusions. Further, the jury's verdict was not inconsistent because the jury could have found that Truong's

injuries resulted from malicious acts leading to an accidental shooting. Accordingly, we affirm.

## FACTS

Around 1:00 A.M. on September 1, 1996, 17-year-old Truong and 10 to 15 of his friends were congregating at Hamilton Viewpoint Park in Seattle. Hall, age 17, and another male arrived in a car. Both Hall and the driver emerged from the car and began yelling at the group. Some of the members of the group testified that Hall and the driver were yelling derogatory terms directed toward Asians and gangs. Witnesses testified that Truong confronted the driver first, then Hall approached and stepped between Truong and the driver. As he approached, witnesses testified to hearing Hall say that he hated "bloods," a term the witnesses interpreted as referring to a gang. A witness also testified that Hall said, "Look at those gooks trying to speak English." Hall and Truong then began arguing.

One of Truong's friends who was present testified that he put his hand on Hall and pushed him back a little, telling him "There is no need to start any trouble." According to the witness, Hall responded by saying, "Don't ever put your hands on me, boy." Hall and Truong then began arguing again. After a few more words were exchanged, the witness testified that Hall stepped back and said, "Tough guy, hmm?" At that point Hall produced a handgun from the right pocket of his pants. Some testimony indicated that Hall put the gun up against Truong's head. Hall and some others testified that he was trying to point the gun in the air when Truong lunged at him. Truong grabbed for the gun with his left hand and punched at Hall's face with his right hand. During the struggle, the gun went off and Truong was shot.

Hall entered an *Alford*[1] plea and was subsequently convicted of first degree assault for his role in the incident.

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

State Farm insured Hall's grandparents under a homeowner's policy and an umbrella policy. Hall was an insured under the policy as a member of his grandparents' household.

Under the policy, Hall was insured against claims for damages because of bodily injury caused by an "occurrence." An "occurrence" is defined in the policy as "an accident, including exposure to conditions, which results in . . . bodily injury." The policy contained the following exclusions:

1. Coverage L [liability coverage] . . . do[es] not apply to:

a. **bodily injury** . . . :

(1) which is either expected or intended by an **insured**; or

(2) to any person . . . which is the result of willful and malicious acts of an **insured**[.]

(Boldface in original.)

The umbrella policy provided coverage for a "loss," which included "an accident that results in **personal injury**." (boldface in original). The umbrella policy also excluded coverage:

2. for **personal injury** . . . :

a. which is either expected or intended by you; or

b. to any person . . . which is the result of your willful and malicious act, no matter at whom the act was directed.

(Boldface in original.)

Truong and his family sued Hall. Hall settled the suit, assigning his rights against the insurance company to Truong and his family. Hall, Truong, and his family (hereinafter "Hall") then filed suit against State Farm for breach of contract.

State Farm moved for summary judgment on the ground that the willful and malicious acts exclusions of the policies applied to bar coverage as a matter of law. The trial court denied the motion. The matter proceeded to a jury trial on whether there had been an "accident" or "occurrence" and whether either of the above exclusions applied. Hall's

conviction for first degree assault was admitted as evidence at the trial.

The jury was given a special verdict form. It answered the questions on the special verdict form as follows:

> QUESTION NO. 1: Was there an "occurrence" or "loss," meaning an accident which resulted in bodily injury during the policy period?
>
> Answer: Yes
>
> QUESTION NO. 2: Was there bodily injury which was either expected or intended by Bryon Hall?
>
> Answer: No
>
> QUESTION NO. 3: Was there bodily injury to any person which was the result of willful and malicious acts of Bryon Hall?
>
> Answer: Yes.

The jury was polled and discharged on October 25, 2000. On November 1, 2000, Hall objected to the verdict, alleging it was inconsistent. The trial court dismissed the action November 3, 2000, and this appeal followed.

## JURY INSTRUCTIONS

The principal issue raised by this appeal is the proper construction of State Farm's willful and malicious acts exclusion. Hall argues that the trial court erred by failing to give the following proposed jury instruction:

> In considering whether either of the insurance policy exclusions apply, you are to consider the application of those exclusions to the act or conduct actually causing injury on September 1, 1996: the firing of the gun.

Hall argues that a strict construction of the exclusion required the jury to focus on the discharge of the gun rather than the acts leading up to it.

No case in this state has interpreted the language of State Farm's willful and malicious acts exclusion. In *Safeco Insurance Co. v. McGrath*, 63 Wn. App. 170, 173, 817

P.2d 861 (1991), this court held that a man who shot at a retreating vehicle but did not intend to shoot any person in the vehicle had not "intentionally" injured a passenger for purposes of an insurance exclusion. The court concluded that "for the exclusion . . . to apply, the insured must intend both the physical act, here pulling the trigger, and the resulting injury, here wounding Hayes." *McGrath*, 63 Wn. App. at 173. Hall cites *McGrath* for the proposition that the "relevant act" here is the discharge of the gun, not the events leading up to it. But the exclusion at issue in McGrath was one for "any act committed by or at the direction of the insured with intent to cause personal injury or property damage." *McGrath*, 63 Wn. App. at 173. Here, the policy excludes injuries that are "the *result of* willful and malicious *acts*." (Emphasis added.)

The trial court properly refused to give the proposed instruction. Unlike the exclusion at issue in *McGrath*, the willful and malicious acts exclusions at issue here do not require an intent to injure. If they did, they would be superfluous, since the policies contain separate exclusions for injuries "expected or intended" by an insured.

Although we construe insurance exemptions strictly against the insurer and in favor of coverage, we also must give each exclusion meaning and interpret exclusions in the context of the entire policy. *See Rodriguez v. Williams*, 107 Wn.2d 381, 384, 729 P.2d 627 (1986). The policy's general language extends coverage only to accidents. Thus, for the willful and malicious acts exclusions to have any meaning, they must apply to some unintended and accidental injuries. *Cf. Rodriguez*, 107 Wn.2d at 384 (distinguishing between policies covering accidents and those extending general coverage). *See also State Farm Fire & Cas. Co. v. Martin*, 186 Ill. 2d 367, 710 N.E.2d 1228, 1233, 238 Ill. Dec. 126 (1999) (construing identical exclusion and concluding it excluded accidental or unintended injuries to firemen resulting from malicious arson). *But see Norris v. State Farm Fire & Cas. Co.*, 341 Ark. 360, 16 S.W.3d 242, 245 (2000) (holding identical exclusion did not apply to victim's head

and brain injuries from collision with pavement if they were accidental result of punch by insured; exclusion language not explicit enough to exclude accidents).

We agree with State Farm that the term "the result of" in the exclusions denotes a causation analysis and that the court correctly allowed the jury to determine whether Hall's acts leading up to the shooting caused Truong's injury. *See Bruns v. PACCAR, Inc.*, 77 Wn. App. 201, 214, 890 P.2d 469 (1995) (factual cause is jury question). Because the proposed instruction would have improperly restricted the jury from considering Hall's acts prior to the discharge of the gun, the proposed instruction was an inaccurate statement of the law and was properly refused by the trial court.

Hall also assigns error to the trial court's failure to define the terms "willful and malicious." We find no error in the court's failure to define those terms because they are within the common understanding of an average juror. *Dever v. Fowler*, 63 Wn. App. 35, 44, 816 P.2d 1237, 824 P.2d 1237 (1991); *see also State v. VanVlack*, 53 Wn. App. 86, 89, 765 P.2d 349 (1989) ("consent" need not be defined in indecent liberties prosecution). Further, the court's instructions accurately stated the law and allowed Hall to thoroughly argue his theory of the case. *See Wlasiuk v. Whirlpool Corp.*, 81 Wn. App. 163, 177, 914 P.2d 102 (1996). The trial court, therefore, did not abuse its discretion by failing to define the terms "willful and malicious" for the jury.

## INCONSISTENT VERDICT

Hall also argues that the jury's answer to the first interrogatory, which indicated that there was an "accident," is inconsistent with the answer to the third interrogatory, which indicated there was an injury which "was the result of willful and malicious acts of Bryon Hall." We disagree. State Farm presented sufficient evidence for the jury to conclude that although Hall did not intend to pull the trigger, his willful and malicious acts provoked the struggle during which the gun discharged. In other words, Truong's

injuries resulted from Hall's malicious acts of getting out of the car, yelling racial and gang-related epithets, engaging in a verbal confrontation with Truong, and then pulling a loaded gun during the confrontation. The verdict, therefore, is not inconsistent.

We have examined the rest of Hall's assignments of error and find them to be meritless, inadequately briefed, or waived for lack of objection below. In addition, because we hold in favor of State Farm, we need not consider the merits of State Farm's cross-appeal.

Affirmed.

Cox and APPELWICK, JJ., concur.

Review denied at 146 Wn.2d 1021 (2002).

