174 P.3d 1175 (2007)
STATE FARM FIRE & CASUALTY CO., an Illinois corporation, Respondent,
v.
HAM & RYE, L.L.C., a Washington limited liability company; and Retail Services, Inc., d/b/a Aldrich's Market, a Washington corporation, Appellants, and
Chanel Chadwick, a single woman, Defendant.
No. 36256-2-II.
Court of Appeals of Washington, Division 2.
October 16, 2007.
Publication Ordered December 11, 2007.
*1176 John Budlong, Faye Jew Wong, Law Offices of John Budlong, Edmonds, WA, Malcolm Stephen Harris, Harris Mericle & Wakayama PLLC, Seattle, WA, for Appellants.
Michael Simpson Rogers, Pamela A. Okano, Reed McClure, Seattle, WA, for Respondent.
ARMSTRONG, P.J.
¶ 1 Chanel Chadwick and a friend started a fire that spread to the nearby Aldrich's Market building, damaging property of Ham & Rye, LLC (H & R) and Retail Services, Inc. (RSI). State Farm insured Chadwick and her grandparents with homeowners' liability and personal umbrella policies. H & R and RSI appeal the trial court's order granting summary judgment to State Farm Fire and Casualty Company and declaring that State Farm's insurance policies did not provide coverage for H & R and RSI's claims against Chadwick. H & R and RSI argue that the trial court erred in ruling that the Aldrich's Market fire was not an accident and resulted from Chadwick's willful and malicious acts. Because reasonable minds could disagree whether the fire was an accident or whether Chadwick acted willfully and maliciously in causing the fire, we reverse the summary judgment and remand for trial.

*1177 FACTS
A. The Aldrich's Market Fire
¶ 2 Late one night, Chanel Chadwick, James Ellis, and Corinne Anderson, all 14 years old, found discarded cardboard and newspaper in dumpsters outside the Aldrich's Market building in Port Townsend. Chadwick and Ellis lit some cardboard on fire and watched it smolder and turn to ash. They then lit some newspaper on fire, pulling it out of the bin and onto the sidewalk. Anderson became bored with the activity and walked away from the other two. Chadwick and Ellis eventually stomped on the fire and patted it with a sweatshirt to put it out. When they rejoined Anderson, she asked them if they were sure the fire was out and they both said yes. The three teens then left the scene, believing that the fire was out. The fire, however, spread to the building, burning it down. Both Chadwick and Ellis have maintained that they did not intend to set fire to the building.[1]
¶ 3 H & R owned the building and RSI operated the Aldrich's Market grocery store in it. H & R and RSI sued Chadwick and Ellis, alleging that they negligently caused a fire adjacent to the H & R property and, as a result, the property was destroyed.
B. Chadwick's Insurance Policies
¶ 4 State Farm insured Chadwick under her grandparents' homeowners' policy with $100,000 coverage. The policy's personal liability coverage, called Coverage L, provided:
If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence, we will:
1. pay up to our limit of liability for the damages for which the insured is legally liable. . . .
Clerk's Papers (CP) at 187. The policy defined an "occurrence" as
an accident, including exposure to conditions, which results in:
a. bodily injury; or
b. property damage. . . .
CP at 174. The policy contained the following exclusions:
Coverage L . . . do[es] not apply to:
a. bodily injury or property damage:
(1) which is either expected or intended by the insured; or
(1) which is the result of willful and malicious acts of the insured.
CP at 188.
¶ 5 State Farm also covered Chadwick under her grandparents' personal liability umbrella policy with $1,000,000 coverage. The umbrella policy provided: "If you are legally obligated to pay damages for a loss, we will pay your net loss minus the retained limit." CP at 212. The policy defined "loss" as "an accident that results in personal injury or property damage during the policy period. This includes injurious exposure to conditions." CP at 210. The policy contained the following exclusions:
We will not provide insurance:
. . .
2. for personal injury or property damage:
a. which is either expected or intended by you; or
b. to any person or property which is the result of your willful and malicious act, no matter at whom the act was directed.
CP at 213.
C. Coverage Dispute
¶ 6 State Farm initially defended Chadwick but reserved its rights to withdraw the defense and deny coverage, asserting that it was "questionable" whether the property damage was the result of an occurrence as defined in the homeowners' policy or a loss as defined in the umbrella policy; State Farm also asserted that even if the fire could qualify as an occurrence or loss, the policies excluded coverage because Chadwick either willfully and maliciously caused the property damage or she expected or intended the damage. State Farm ultimately denied coverage on the grounds that the fire was not an *1178 accident and that Chadwick willfully and maliciously caused the fire.[2] State Farm then initiated this lawsuit, seeking a declaratory judgment that its homeowners' and personal liability umbrella policies did not cover Chadwick for the Aldrich's Market fire.[3]
¶ 7 Chadwick settled the H & R and RSI lawsuit, agreeing to an entry of judgment against her and assigning her claims against State Farm to H & R and RSI in exchange for a covenant not to execute on the judgment. H & R and RSI then filed counterclaims against State Farm, alleging that State Farm breached its insurance contract and its duty of good faith by denying coverage for the fire loss.
¶ 8 The trial court granted State Farm's motion for partial summary judgment, ruling that there was no coverage as a matter of law. In its oral ruling, the trial court stated that the fire was a "deliberate act" by Chadwick and that she started it with "willful and malicious behavior." Report of Proceedings (RP) at 4. H & R and RSI then voluntarily dismissed their counterclaims and sought direct review in the Supreme Court, which transferred the case to us.
¶ 19 We address two questions: (1) whether the Aldrich's Market fire was an "accident" within the meaning of State Farm's insurance contract and therefore a covered "occurrence," and if so, (2) whether Chadwick's liability was, nonetheless, excluded because she willfully and maliciously caused the fire.

ANALYSIS

I. Summary Judgment Standard
¶ 10 Chadwick argues that the trial court used an incorrect definition of the term "accident" in granting State Farm's motion for summary judgment; she also asserts that she did not act willfully and maliciously in setting the fire.
¶ 11 We review an order granting summary judgment de novo. Go2Net, Inc. v. FreeYellow.com, Inc., 158 Wash.2d 247, 252, 143 P.3d 590 (2006) (citing Troxell v. Rainier Pub. Sch. Dist. No. 307, 154 Wash.2d 345, 350, 111 P.3d 1173 (2005)). Summary judgment is appropriate where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. CR 56(c). In our review, we consider all facts, and reasonable inferences from those facts, in the light most favorable to the nonmoving party. Berrocal v. Fernandez, 155 Wash.2d 585, 590, 121 P.3d 82 (2005) (citing Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982)).

II. Principles of Insurance Policy Interpretation
¶ 12 We interpret insurance policies as a matter of law. Kitsap County v. Allstate Ins. Co., 136 Wash.2d 567, 575, 964 P.2d 1173 (1998). Insurance policies are contracts, and courts seek to determine the contracting parties' intent by resorting to a fair, reasonable, and sensible construction of the contract's language, as the average insurance purchaser would understand it. Am. Nat'l Fire Ins. Co. v. B & L Trucking & Constr. Co., 134 Wash.2d 413, 427, 951 P.2d 250 (1998).
¶ 13 In general, we will enforce an insurance contract as written if the contract is clear and unambiguous. Allstate Ins. Co. v. Peasley, 131 Wash.2d 420, 424, 932 P.2d 1244 (1997) (citing Transcon. Ins. Co. v. Wash. Pub. Utils. Dist's. Util. Sys., 111 Wash.2d 452, 456, 760 P.2d 337 (1988)). If a policy leaves a term undefined, we give the term its plain, ordinary, and popular meaning; we may use a standard English dictionary definition as an aid. Panorama Vill. Condo. Owners Ass'n Bd. of Dirs. v. Allstate Ins. Co., 144 Wash.2d 130, 139, 26 P.3d 910 (2001).
¶ 14 Determining if insurance coverage exists is a two-step process: an insured must show that a loss is within the scope of her coverage; the insurer then *1179 bears the burden of showing that an exclusion applies. McDonald v. State Farm Fire & Cas. Co., 119 Wash.2d 724, 731, 837 P.2d 1000 (1992). Exclusions from insurance coverage are contrary to the fundamental protective purpose of insurance and we will not extend them beyond their clear and unequivocal meaning. Stuart v. Am. States Ins. Co., 134 Wash.2d 814, 818-19, 953 P.2d 462 (1998). In the same vein, we construe exclusions against the insurer. Stuart, 134 Wash.2d at 818-19, 953 P.2d 462.

III. Definition of "Accident"
¶ 15 Chadwick contends that the trial court erred in concluding that because she deliberately set the paper outside the market on fire, the Aldrich's Market fire was not an accident.
¶ 16 State Farm's homeowners' policy covers only an "occurrence," which is defined as an "accident" that causes harm to a person or property. CP at 174. And the personal liability umbrella policy covers only a "loss," which is defined as an "accident" that results in personal injury or property damage. CP at 210. Thus, the Aldrich's Market fire is covered only if it was an accident. Because the State Farm policies do not define the term "accident," we must give the term its plain, ordinary meaning. Panorama Vill., 144 Wash.2d at 139, 26 P.3d 910.
¶ 17 The trial court used the following definition of accident:
[A]n intentional act cannot, by definition, be an accident. Moreover, the [Supreme] Court has defined "accident" as an unintentional, unexpected, unforeseen happening, and has stated that an accident is never present when a deliberate act is performed unless some additional unexpected, independent, and unforeseen happening occurs which produces or brings about the result of injury or death. The means, as well as the results, must be unforeseen, involuntary, unexpected, and unusual.
RP at 3.
¶ 18 The Washington Supreme Court has used this definition of accident in several cases. See, e.g., Safeco Ins. Co. of Am. v. Butler, 118 Wash.2d 383, 401, 823 P.2d 499 (1992) ("`[A]n accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen happening occurs which produces or brings about the result of injury or death. The means as well as the result must be unforeseen, involuntary, unexpected and unusual.'" (emphasis added) (quoting Detweiler v. J.C. Penney Cas. Ins. Co., 110 Wash.2d 99, 104, 751 P.2d 282 (1988)); Roller v. Stonewall Ins. Co., 115 Wash.2d 679, 684, 801 P.2d 207 (1990), overruled on other grounds by Butzberger v. Foster, 151 Wash.2d 396, 408, 89 P.3d 689 (2004).
¶ 19 Division Three of the Court of Appeals used this formulation in Unigard Mutual Insurance Co. v. Spokane School District No. 81, 20 Wash.App. 261, 263-64, 579 P.2d 1015 (1978)). In that case, an 11-year-old boy broke into a building and set a fire inside. Unigard, 20 Wash.App. at 263, 579 P.2d 1015. After attempting unsuccessfully to extinguish the fire with water from a drinking fountain, he became frightened and ran out of the building. Unigard, 20 Wash. App. at 263, 579 P.2d 1015. He did not notify anyone of the fire, which caused extensive damage to the building. Unigard, 20 Wash.App. at 263, 579 P.2d 1015. The court held that, even though the boy did not intend or expect to cause damage to the building, the damage was not caused by accidental means because he intentionally and deliberately set the fire. Unigard, 20 Wash.App. at 264, 579 P.2d 1015. In finding no coverage, the court focused only on the means (deliberately setting the fire), concluding that the boy's deliberate act of setting the fire precluded coverage because it could not "be said to be involuntary." Unigard, 20 Wash.App. at 264, 579 P.2d 1015. The analysis was consistent with the court's explanation that both the "means as well as the result must be unforeseen, involuntary, unexpected and unusual" to be an occurrence-accident. Unigard, 20 Wash.App. at 264, 579 P.2d 1015.
¶ 20 Yet the Supreme Court has found "many definitions of the word `accident.' Judging from the plethora of law on the subject, no one of them seems to be perfectly *1180 satisfactory to everyone."[4]Detweiler, 110 Wash.2d at 105, 751 P.2d 282 (footnote omitted). And the court has explained that the Unigard means/result definition,
is founded on the elemental principle proposition that injuries will not be deemed caused by accident where the injuries are intentionally inflicted, this generally being considered a risk which it would be against public policy to insure. Thus, for example, the law will not countenance one intentionally shooting someone and then saying that since he or she did not intend to hurt the person shot, what happened was an "accident" covered by liability insurance.
Detweiler, 110 Wash.2d at 105-06, 751 P.2d 282. Courts have used the Unigard ends/ means rule to deny coverage as a matter of law where the insured intentionally inflicts harm and, thus, coverage is against public policy. See, e.g., Roller, 115 Wash.2d at 684-85, 801 P.2d 207 (injury caused by deliberately ramming one car into another and deliberately hitting pedestrian not an accident); Lloyd v. First Farwest Life Ins. Co., 54 Wash.App. 299, 302-04, 773 P.2d 426 (1989) (injury from deliberate ingestion of cocaine not an accident); W. Nat'l Assurance Co. v. Hecker, 43 Wash.App. 816, 822-23, 719 P.2d 954 (1986) (injury caused by deliberate act of forcible sexual intercourse not an accident); Safeco Ins. Co. of Am. v. Dotts, 38 Wash.App. 382, 385-86, 685 P.2d 632 (1984) (death caused by deliberate slap not an accident).
¶ 21 But Division Three has recently explained that the Unigard ends/means rule does not exclude all intentional acts from the definition of accident; rather, the definition equates "intentional" with "deliberate." Nationwide Mut. Ins. Co. v. Hayles, Inc., 136 Wash.App. 531, 537, 150 P.3d 589 (2007) (citing Roller, 115 Wash.2d at 683, 801 P.2d 207). "By use of the term `intentional,' however, Roller does not mean that an accident must be caused by an unconscious, nonvolitional act. To prove that an intentional act was not an accident, the insurer must show that it was deliberate, meaning done with awareness of the implications or consequences." Hayles, 136 Wash.App. at 538, 150 P.3d 589 (citing Detweiler, 110 Wash.2d at 104, 751 P.2d 282). The court concluded that the insured's act of turning on an irrigation system, although intentional, was not deliberate because no reasonable mind could conclude that, under the circumstances, he should have anticipated that turning on the water would rot the onion crop being irrigated. Hayles, 136 Wash.App. at 539, 150 P.3d 589.
¶ 22 The Supreme Court has applied the reasonably foreseeable result test in two intentional shooting cases. In Detweiler, the insured jumped onto the back of his truck when another man started to drive it away. Detweiler, 110 Wash.2d at 101, 751 P.2d 282. When the insured fell off the truck, he fired several shots at the wheel, intending to stop it; the bullets fragmented when they hit the truck, injuring the insured. Detweiler, 110 Wash.2d at 101, 751 P.2d 282. The court held that even though the insured intended to shoot at the truck, given the confusion of the incident, including the rapidly moving truck and shooter, reasonable minds could disagree as to whether he should have expected or foreseen the injuries. Detweiler, 110 Wash.2d at 108, 751 P.2d 282. Thus, the court remanded for a jury trial on the issue of whether the resulting injury was foreseeable. Detweiler, 110 Wash.2d at 108-09, 751 P.2d 282.
¶ 23 In Butler, the insured fired a gun at a truck carrying young men he believed had destroyed his mail box. Butler, 118 Wash.2d at 386-87, 823 P.2d 499. A ricocheting bullet injured one of the men. Butler, 118 Wash.2d at 401, 823 P.2d 499. The court held that no reasonable person could conclude that the insured, who had firearms training, was unaware of the possibility of ricochet, or that a *1181 ricochet might hit an occupant of the truck. Butler, 118 Wash.2d at 401, 823 P.2d 499. Accordingly, as a matter of law, the incident was not a covered accident. Butler, 118 Wash.2d at 401, 823 P.2d 499.
¶ 24 Thus, where the insured acts intentionally but claims that the result was unintended, the incident is not an accident if the insured knew or should have known facts from which a prudent person would have concluded that the harm was reasonably foreseeable. State Farm Fire & Cas. Co. v. Parrella, 134 Wash.App. 536, 540, 141 P.3d 643 (2006) (citing Lloyd, 54 Wash.App. at 302, 773 P.2d 426), review denied, 160 Wash.2d 1009, 160 P.3d 54 (2007).
¶ 25 Here, the facts are not so compelling that we can say as a matter of law that Chadwick and Ellis knew or should have known that the fire would spread from the newspapers on the sidewalk to the building. Chadwick and Ellis lit some paper in a dumpster on fire and pulled it out onto the sidewalk; they watched as the fire burned but did not intentionally let it burn out of control; rather, they believed they had extinguished the fire before they left the scene. As in Detweiler, a jury must decide whether, considering the entire sequence of events, the resulting fire damage to the Aldrich's Market building was reasonably foreseeable. See Detweiler, 110 Wash.2d at 108-09, 751 P.2d 282.
¶ 26 Although the facts in Unigard are similar to the case at hand, the case is distinguishable. There, the youth started a fire inside a building, saw it burn out of control, and left the building without informing anyone of the fire. Unigard, 20 Wash.App. at 263, 579 P.2d 1015. In finding no coverage, the court looked only at the means, concluding that because the boy intentionally set the fire, the resulting damage was not accidental. Unigard, 20 Wash.App. at 264, 579 P.2d 1015. If we apply the reasonably foreseeable test to the result, we would reach the same result; any reasonable person would conclude that the youth knew or should have known that the school building would burn as a result.
¶ 27 We next consider whether State Farm's willful and malicious act exclusion precludes coverage even though a jury could find the fire to be an accident.

IV. Willful and Malicious Conduct
¶ 28 State Farm reasons that "willful" means "intentional" and "malicious" means "done with wicked or mischievous intentions or motives; wrongful and done intentionally without just cause or excuse." Br. of Respondent at 27. And, according to State Farm, Chadwick intentionally and wrongfully set fire to the paper with "mischievous intentions or motives and without just cause or legal justification or excuse." Br. of Respondent at 27. State Farm emphasizes that it must show only that Chadwick's setting fire to the paper was willful and malicious, not the resulting injury.
¶ 29 Chadwick points us to a definition of "malicious" more to her liking from Webster's Ninth New Collegiate Dictionary (1989): "[the] desire to see another experience pain, injury or distress," and notes that there is no evidence that she had any such desire. Br. of Appellant at 41.
¶ 30 The only Washington case interpreting an exclusion for harm that is the "result of willful and malicious acts" is Hall v. State Farm Fire & Casualty Co., 109 Wash.App. 614, 616, 36 P.3d 582 (2001). There, the insured brandished a loaded gun during a confrontation he initiated; the claimant reached for the gun and was shot in the ensuing struggle. Hall, 109 Wash.App. at 617, 36 P.3d 582. A jury found that the shooting was an accident and that the insured did not intend to cause bodily injury, but it found that the injury resulted from the insured's willful and malicious acts. Hall, 109 Wash.App. at 619, 36 P.3d 582. The court held that the willful and malicious acts exclusion could apply to some unintended and accidental injuries. Hall, 109 Wash.App. at 620, 36 P.3d 582. The court also held that the phrase "the result of" in the exclusion denoted a causation analysis and whether the insured's acts leading up to the shooting caused the shooting was a proper question for the jury. Hall, 109 Wash.App. at 620-21, *1182 36 P.3d 582 (citing Bruns v. PACCAR, Inc., 77 Wash.App. 201, 214, 890 P.2d 469 (1995)).
¶ 31 Here, Chadwick intentionally set the paper fire. But, as State Farm concedes, there is no evidence she intended to harm the Aldrich's Market building. Even if we accept State Farm's definition of "malicious," we could not say as a matter of law that Chadwick set the paper fire with a wicked intent; and if we accept Chadwick's definition, there is no evidence she intended to cause another "pain, injury or distress."[5] Moreover, although State Farm may be correct that it need show only that setting the paper fire was malicious, evidence of Chadwick's attempt to put the fire out would be relevant to whether she acted maliciously in setting the fire. We conclude that issues of fact remain as to Chadwick's intent that a jury must resolve. Hall, 109 Wash.App. at 621, 36 P.3d 582 (jury must consider all of insured's acts leading up to injury to determine whether injury was the result of insured's willful and malicious acts).
¶ 32 Reversed and remanded.
HUNT and QUINN-BRINTNALL, JJ.
NOTES
[1] The Jefferson County prosecutor charged Chadwick with first degree reckless burning in connection with the fire but later dismissed the charge.
[2] State Farm dropped its assertion that Chadwick expected or intended the damage to Aldrich's Market, and it concedes on appeal that the intended or expected acts exclusions do not apply.
[3] Mutual of Enumclaw and Farmers Insurance Company, which provided homeowners' insurance to Ellis's parents, paid the full extent of their policy limits without disputing coverage.
[4] In other contexts, Washington courts have used other definitions of the term accident. See, e.g., Federated Am. Ins. Co. v. Strong, 102 Wash.2d 665, 674, 689 P.2d 68 (1984) ("A loss is `accidental' when it happens without design, intent, or obvious motivation.") (quoting Webster's Third New International Dictionary 11 (1971)); Yakima Cement Prods. Co. v. Great Am. Ins. Co., 93 Wash.2d 210, 215, 608 P.2d 254 (1980) (in a product liability case, an accident is "`an unexpected, unforeseen, or undesigned happening or consequence from either a known or unknown cause'") (quoting Hauenstein v. St. Paul-Mercury Indem. Co., 242 Minn. 354, 358-59, 65 N.W.2d 122 (1954)).
[5] The Hall court held that the trial court did not err in submitting the issue of whether the insured acted maliciously without defining "malice" because the average juror would understand the terms "willful" and "malicious." Hall, 109 Wash.App. at 621, 36 P.3d 582.