FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
MARCH 14, 2024

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MARCH 14, 2024

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

THE GARDENS CONDOMINIUM,
a Washington nonprofit corporation,

    Respondent,

v.

FARMERS INSURANCE
EXCHANGE, a California company,

    Petitioner.

No. 101892-4

En Banc

Filed: March 14, 2024

JOHNSON, J.—This case concerns the interpretation of a resulting loss exception in an all-risk insurance policy and asks us to decide whether the exception in this case preserves coverage when an excluded event—faulty workmanship—causes loss or damage that would otherwise be covered by the policy, despite causation language excluding damage in the sequence of events following faulty workmanship. The trial court, on summary judgment, ruled for Farmers Insurance Exchange and held the policy intended to exclude damage in the sequence of events caused by faulty workmanship. The Court of Appeals reversed and concluded that

the resulting loss exception preserved coverage. We accepted review and affirm the

Court of Appeals. *Gardens Condo. v. Farmers Ins. Exch.*, 24 Wn. App. 2d 950, 521

P.3d 957 (2022), *review granted*, 2 Wn.3d 1011 (2023).

FACTS AND PROCEDURAL HISTORY

Farmers Insurance Exchange issued an insurance policy for the Gardens

Condominium in 2002. This version of the policy was in place from October 2002

to October 2004. The parties agree that the provisions contained in the 2002 policy

control in determining whether Gardens is entitled to the coverage it now seeks.

The policy provided coverage for loss or damage caused by a "'Covered Cause of

Loss.'" Clerk's Papers (CP) at 10. It defined a "covered cause of loss" as any risk

of direct physical loss. However, a loss is not covered if it is caused by an excluded

event. This is referred to as an all-risk policy. The policy further stated damage is

caused by an excluded event if that event (1) "directly or solely results in loss or

damage" or (2) "initiates a sequence of events that results in loss or damage,

regardless of the nature of any intermediate or final event in that sequence." CP at

239. The second prong suggests that if an exclusion kicks off a chain of events

causing loss or damage, the policy does not provide coverage for any losses in that

chain.

The 2002 policy excluded coverage for faulty, inadequate, or defective design, specifications, workmanship, repair, construction, or renovations.[1] However, this faulty workmanship exclusion contains what is known as a resulting loss exception. Specifically, the policy stated, "'[I]f loss or damage [caused] by a Covered Cause of Loss results, we will pay for that resulting loss or damage.'" CP at 239. In other words, as written, if faulty workmanship causes a covered peril to occur and that covered peril results in loss or damage, the loss or damage will be covered.

In late 2002, Gardens found damage to the condominium building that was caused by faulty design and construction of the building's roof. It was determined the roof had insufficient interior vents and the design of the rafters and joists—the structural members used in the roof's framing—prevented needed ventilation. Due to this inadequate ventilation, water vapor condensed on the underside of the roof sheathing, causing damage. Gardens redesigned and repaired the roof assembly in 2003-2004 to increase ventilation and eliminate condensation by installing sleepers on top of the joists.

---

[1] The 2002 policy also excluded damage caused by water in certain circumstances. Farmers later added exclusions for water "in any form" that remained in all subsequent versions of the policy and for damage caused by "the presence or condensation of humidity" and "moisture or vapor." CP at 143, 148.

In 2019, Gardens discovered water damage to the roof's fireboard and sheathing, as well as several damaged sleepers and joists. The space that had been added between the roof surface and ceiling during the repair did not allow for sufficient ventilation. Consequently, water vapor continued to get trapped inside the space and could not ventilate. Additionally, condensation formed on the underside of the sheathing. This exposure to water vapor and condensation damaged the sheathing, fireboard, and joists.

Gardens sought coverage for the cost of repairing damage to the roof sheathing and framing caused by water vapor, condensation, and humidity. Farmers denied the claim. It concluded that faulty construction caused a lack of ventilation in the roof assembly, which caused the loss. Because faulty construction "initiated a sequence of events resulting in the loss or damage," the damage was excluded under the faulty workmanship exclusion. CP at 160.

Gardens filed an action for declaratory judgment, seeking coverage under the policy for "'covered hidden water damage'" to the roof sheathing and framing. CP at 3. It moved for summary judgment, arguing the policy covered damage caused by condensation and water vapor. Gardens argued that because the policy ordinarily covered these types of damages, the resulting loss exception to the faulty workmanship exclusion preserved this coverage even though the loss resulted from faulty workmanship. Gardens clarified that it wanted coverage for the damage to

the fireboard and sheathing but not coverage for the cost of correcting the defective sleepers. Farmers also moved for summary judgment, arguing the resulting loss exception applies only if a covered event breaks the causal chain between the excluded risk and subsequent losses or if there is damage to other property. Both motions relied on the parties' joint stipulation, which acknowledged that "faulty, inadequate, and/or defective construction, repair, and/or redesign initiated a sequence of events including inadequate ventilation, excessive humidity, and condensation that resulted in loss or damage." CP at 241.

The trial court granted Farmers' motion for summary judgment. The court found that the policy intended to exclude damage where an uncovered event— here, faulty workmanship—initiated a sequence of events causing damage. The court stated in its ruling that consistent with *TMW Enterprises, Inc. v. Federal Insurance Co.*, 619 F.3d 574 (6th Cir. 2010), the resulting loss clause only "kicks in when there's some sort of unexpected or some kind of causal break." Hr'g at 40.

The Court of Appeals reversed.[2] Consistent with *Vision One, LLC v. Philadelphia Indemnity Insurance Co.*, 174 Wn.2d 501, 276 P.3d 300 (2012), it reasoned that by including the resulting loss clause, Farmers agreed to pay for damage caused by a covered peril even when it results from faulty workmanship. Thus, if condensation and humidity are covered perils under the policy, the policy

---

[2] *Gardens Condo.*, 24 Wn. App. 2d at 960.

must cover damage caused by those perils. The court also pointed out that this court has never interpreted resulting loss clauses to preserve coverage only for damage caused by independent, unforeseen covered perils. The court remanded to the trial court to determine if condensation was a covered peril, and therefore whether the resulting loss exception applied. The court did not address Gardens' alternative argument that the policy was ambiguous.[3]

## ANALYSIS

We review de novo an order granting summary judgment. Interpretation of language in insurance policies is a question of law also reviewed de novo. *Seattle Tunnel Partners v. Great Lakes Reinsurance (UK), PLC*, 200 Wn.2d 315, 320, 516 P.3d 796 (2022) (citing *Kut Suen Lui v. Essex Ins. Co.*, 185 Wn.2d 703, 710, 375 P.3d 596 (2016)).

Several well-settled rules apply in interpreting insurance policies. Courts construe insurance policies as a whole, giving the language "'a fair, reasonable, and sensible construction'" as would be given by an average person purchasing insurance. *Seattle Tunnel Partners*, 200 Wn.2d at 321 (internal quotation marks

---

[3] Gardens alternatively argues that the policy is ambiguous and must be construed in favor of coverage. Suppl. Br. of Resp't at 30. Language in an insurance policy is ambiguous if it is "fairly susceptible to two different but reasonable interpretations." *Seattle Tunnel Partners v. Great Lakes Reinsurance (UK), PLC*, 200 Wn.2d 315, 321, 516 P.3d 796 (2022) (citing *Kut Suen Lui v. Essex Ins. Co.*, 185 Wn.2d 703, 712, 375 P.3d 596 (2016)). However, this court did not find ambiguity in either *Vision One* or *Sprague v. Safeco Insurance Co. of America*, 174 Wn.2d 524, 276 P.3d 1270 (2012), where we interpreted insurance policies containing almost identical language. Although this policy may be confusing, it is not ambiguous.

omitted) (quoting *Queen Anne Park Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 183 Wn.2d 485, 489, 352 P.3d 790 (2015)). Undefined terms are assigned their "plain, ordinary, and popular" meanings. *Seattle Tunnel Partners*, 200 Wn.2d at 323. Courts should "harmonize any potentially conflicting clauses to give effect to all of the contract's provisions." *Seattle Tunnel Partners*, 200 Wn.2d at 336. A policy with clear and unambiguous language is to be enforced as written and without modification. Courts construe exclusions in a policy strictly against the insurer. This is because "'[e]xclusions from insurance coverage are contrary to the fundamental protective purpose of insurance.'" *Vision One, LLC*, 174 Wn.2d at 512 (alteration in original) (quoting *State Farm Fire & Cas. Co. v. Ham & Rye, LLC,* 142 Wn. App. 6, 13, 174 P.3d 1175 (2007)).

Under Washington law, resulting loss exceptions preserve coverage for covered losses when an exclusion would have otherwise removed it. Courts determine whether an insurance policy covers loss or damage by "'characterizing the perils contributing to the loss, and determining which perils the policy covers and which it excludes.'" *Wright v. Safeco Ins. Co. of Am.*, 124 Wn. App. 263, 271, 109 P.3d 1 (2004) (quoting *Bowers v. Farmers Ins. Exch.*, 99 Wn. App. 41, 44, 991 P.2d 734 (2000)). An all-risk policy may bar coverage when an excluded peril causes damage; however, a resulting loss clause "carve[s] out an exception to the policy exclusion." *Vision One*, 174 Wn.2d at 514 (citing *McDonald v. State Farm*

*Fire & Cas. Co.*, 119 Wn.2d 724, 734, 837 P.2d 1000 (1992)). Resulting loss clauses preserve coverage for loss that ensues after an excluded event if it would otherwise be covered by the policy. However, the excluded event itself is never covered.

The purpose of a resulting loss exception is "to preserve coverage for losses caused, in part, by an excluded peril if a loss follows . . . from a covered peril." Christopher C. French, *The "Ensuing Loss" Clause in Insurance Policies: The Forgotten and Misunderstood Antidote to Anti-Concurrent Causation Exclusions*, 13 NEV. L.J. 215, 219 (2012). This exception serves as a reminder that exclusions in an insurance policy "should not swallow the basic coverage provided by the policy." French, *supra*, at 219; *see Vision One*, 174 Wn.2d at 514-16.

This court decided two cases involving faulty workmanship exclusions and corresponding resulting loss exceptions: *Vision One* and *Sprague*.[4] In *Vision One*, this court decided that an all-risk insurance policy provided coverage for collapse damage under a resulting loss exception. In that case, subcontractors installed shoring to support poured concrete slabs for the building's floors. When the contractor poured concrete for the first floor, however, the shoring underneath gave way. This caused the framing, rebar, and newly poured concrete to crash down onto the lower level of the parking area. Vision One submitted an insurance claim

---

[4] *Sprague v. Safeco Ins. Co. of Am.*, 174 Wn.2d 524, 276 P.3d 1270 (2012).

seeking coverage for the damage caused by the collapse. The relevant language in Vision One's policy is the same as in Gardens' policy. Vision One's policy required the insurer to pay for loss or damage caused by a covered cause of loss, which was defined as any risk of direct physical loss not excluded. The policy stated that damage is caused by an excluded event if "'the occurrence of that event: (1) [d]irectly and solely results in loss or damage; or (2) [i]nitiates a sequence of events that results in loss or damage, regardless of the nature of any intermediate or final event in that sequence.'" *Vision One*, 174 Wn.2d at 507 (quoting court papers). The policy included an exclusion for deficient design and another for faulty workmanship. The faulty workmanship exclusion contained a resulting loss exception, providing that "'if loss or damage by a Covered Cause of Loss results, [the insurer] will pay for the loss or damage caused by that Covered Cause of Loss.'" *Vision One*, 174 Wn.2d at 507 (quoting court papers). The design exclusion did not have a resulting loss exception.

Vision One sued after the insurance company denied its claim under the defective design and faulty workmanship exclusions. After a trial, the jury returned a verdict in favor of Vision One. The Court of Appeals reversed. However, this court reversed the Court of Appeals and reinstated the judgment of the trial court. We said the dispositive question in the case was "whether the loss that ensues from the excluded event is covered or excluded." *Vision One*, 174 Wn.2d at 516. We

concluded the resulting loss clause restored coverage for damage caused by the collapse because faulty workmanship—an excluded peril—had resulted in a covered loss—collapse. Because the policy covered collapse, we held the trial court correctly ruled that Vision One was entitled to coverage for the ensuing loss from the collapse ("the clean-up, repair, and reconstruction of the collapsed concrete floor"). *Vision One*, 174 Wn.2d at 517. By reversing the Court of Appeals and saying nothing about a requirement that the covered peril be independent, we rejected the argument that the resulting loss provision only "applies when an excluded peril causes a separate and independent covered peril." *Vision One, LLC v. Phila. Indem. Ins. Co.*, 158 Wn. App. 91, 107, 241 P.3d 429 (2010). A resulting loss exception applies whether or not the covered peril is independent.

This court heard *Sprague* at the same time as *Vision One*. The claim in *Sprague* concerned a defectively constructed deck system. The deck was constructed with supports—or "fin walls"—running from a concrete pad through the decks. Contractors later discovered these fin walls had rotted and "were in an advanced state of decay." *Sprague*, 174 Wn.2d at 526. Engineers concluded that the supports rotted because of construction defects. The Spragues sought coverage, arguing the decks were in a state of imminent collapse. However, the insurer denied the claim under the policy's exclusions for construction defects and rot. The policy at issue in *Sprague*, as in *Vision One*, was an all-risk policy. It did not

explicitly address whether collapse was covered or excluded. But the policy excluded coverage for damage caused by mold or rot and for damage caused by defective design or construction. The policy also said, despite the exclusions, "'any ensuing loss not excluded is covered.'" *Sprague*, 174 Wn.2d at 527. The Spragues paid to repair the fin walls and then sued Safeco.

We characterized *Sprague* as a "straightforward" application of *Vision One*. 174 Wn.2d at 528. We reiterated the rule from *Vision One* that under a resulting loss exception, resulting loss caused by an excluded peril is covered unless it is subject to its own exclusion. However, we held the advanced decay of the fin walls was not a separate, ensuing loss covered by the policy. We found that whether the deck was in a state of collapse was irrelevant as the deck's condition was the result of two excluded perils—defective construction and rot—and did not constitute a separate loss apart from those perils. Because "the natural process of deterioration will result in collapse," we found that a collapse is merely the end result of deterioration and not a new and different peril from rot. *Sprague*, 174 Wn.2d at 530. Thus, the exclusions for rot and defective workmanship barred coverage for the cost of repairing the defective fin walls. In a concurring opinion, Justice Alexander reasoned that there should be no coverage because the deck had not yet collapsed and the only damage was the rotting of the fin walls themselves. Applying *Vision One*, *Sprague* clarified that a resulting loss exception requires

separate ensuing loss—damage beyond the faultily constructed or defectively designed element—caused by a new and distinct covered peril.

With the above principles in mind, we can interpret the relevant policy language in this case. The parties agree that faulty workmanship exists here: failure to add enough space for adequate ventilation in the roof redesign and repair. CP at 241. This faulty workmanship resulted in potentially covered perils (condensation and water vapor) causing loss (water-related damage to other parts of the roof). If condensation and water vapor are new and distinct perils and the loss to the roof components (other than those defectively constructed) is a separate ensuing loss, the policy provides coverage, assuming condensation and water vapor are also covered perils.

Farmers argues that the resulting loss exception does not apply to natural consequences of an excluded peril and, relatedly, that condensation is not a new peril because it is the "natural and unavoidable byproduct of the faulty lack of ventilation." Suppl. Br. of Farmers Ins. Exch. at 21. Farmers relies on *Sprague*; however, it misunderstands *Sprague*'s reasoning. In *Sprague*, we did not hold that a resulting loss is not covered if it is a natural consequence of an excluded peril. Instead, we considered whether rot was the same condition as collapse to determine if the rot exclusion applied. *Sprague*'s reasoning was specific and our discussion of the "natural process" of deterioration was describing whether the

advanced state of decay of the fin walls was the same peril as rot. *Sprague*, 174 Wn.2d at 530. We did not discuss whether collapse is a natural and unavoidable byproduct of faulty workmanship. Farmers' argument that the natural consequences of an excluded peril are not covered is contrary to the conclusion in *Vision One* and would negate the effect of the resulting loss clause. Collapse caused by instability is the very loss that proper installation of shoring is intended to prevent. If natural consequences were not covered, we would have found no coverage in *Vision One*.

Also, courts should not read additional language into a policy. Adopting Farmers' reasoning here would do exactly that. The resulting loss exception to the faulty workmanship exclusion states that Farmers will pay for loss or damage caused by a covered cause of loss resulting from faulty workmanship. It does not state that the covered cause of loss must be independent from the faulty workmanship or that it cannot be a natural consequence of faulty workmanship. Because the language of the exception is clear, we will not rewrite it by adding requirements. Consistent with our principles of interpretation, exclusions are strictly construed against the insurer. Thus, we conclude that a resulting loss exception must have effect to preserve coverage for loss resulting from covered perils regardless of whether the peril is the natural consequence of an excluded peril.

Farmers argues this holding will mean "there could never be any excluded sequence of events." Suppl. Br. of Farmers Ins. Exch. at 25-26. We disagree. Insurers are free to draft policies that contain "sequence of events" causation language and do not have resulting loss exceptions to the exclusions. As Gardens correctly points out, Farmers could have drafted the policy differently to ensure that the entire causal chain resulting from an excluded peril would be excluded by not including a resulting loss exception or by limiting the exception. Suppl. Br. of Resp't at 13-14.

We hold that the resulting loss exception to the faulty workmanship exclusion revives coverage even if the faulty workmanship exclusion would otherwise deny it. We affirm the Court of Appeals and remand to the trial court for further proceedings consistent with this opinion.[5]

---

[5] Gardens asks this court to hold that the resulting loss clause applies as a matter of law to damages caused by water vapor and condensation resulting from faulty construction. Suppl. Br. of Resp't at 16, 32. However, Gardens filed no cross appeal and, during oral argument, asked us to affirm the Court of Appeals' decision, which remanded this issue to the trial court.

Johnson, J.

WE CONCUR:

González, C.J.

Yu, J.

Madsen, J.

Montoya-Lewis, J.

Stephens, J.

Whitener, J.

Gordon McCloud, J.

Leach, J.P.T.