## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| HIGH DEFINITION HOMES, LLC, a Washington limited liability company, | No. 58677-1-II |
| Appellant, | |
| v. | |
| STEWART TITLE GUARANTY COMPANY, a foreign insurance company, | UNPUBLISHED OPINION |
| Respondent. | |

LEE, J. — High Definition Homes, LLC (HDH) appeals the superior court's grant of a motion for judgment on the pleadings in favor of Stewart Title Guaranty Company (Stewart Title) and denial of HDH's motion for reconsideration of the superior court's decision to grant Stewart Title's motion for judgment on the pleadings. HDH argues that it was entitled to coverage under a title insurance policy issued by Stewart Title and Stewart Title wrongfully denied its claim.

Because HDH cannot prove any set of facts that would justify relief, we hold that the superior court did not err in granting Stewart Title's motion for judgment on the pleadings and denying HDH's motion for reconsideration. Accordingly, we affirm.

FACTS

A. BACKGROUND

In April 2021, HDH, a Washington limited liability company, contracted to purchase property in Centralia. HDH understood from the sellers that it was purchasing "two separate legal tracts"; each tract had its own tax parcel number and address. Clerk's Papers (CP) at 2.

No. 58677-1-II

The purchase and sale agreement stated that the property's legal description was as provided in "Exhibit A." CP at 74. Exhibit A was comprised of two legal descriptions on separate pages. The first page of Exhibit A stated:

> Tracts A of Boundary Line Adjustment BLA-2017 0036 recorded in Volume 3 of boundary line adjustments, page 142, under Auditor's File No. 3462824, being lots 2 and 5, block 1 of Horner's Subdivision of a portion of lots 1 and 2, August Sawalls addition to Centralia as recorded in Volume 4 of Plats, page 87.

CP at 85 (some capitalization omitted). The second page stated:

> Tract B of Boundary Line Adjustment BLA-2017 0036 recorded in Volume 3 of boundary line adjustments, page 142, under Auditor's File No. 3462824, being lots 2 and 5, block 1 of Horner's Subdivision of a portion of lots 1 and 2, August Sawalls addition to Centralia as recorded in Volume 4 of Plats, page 87.

CP at 86 (some capitalization omitted). Both descriptions appear to be modified with whiteout.

In connection with the purchase, HDH applied for, and obtained, a title insurance policy through Stewart Title. The title insurance policy stated in relevant part:

> Subject to the exclusions from coverage, the exceptions from coverage contained in Schedule B and the conditions, Stewart Title Guaranty Company . . . insures . . . against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:
>
> 1.    Title being vested other than as stated in Schedule A.
>
> . . . .
>
> 3.    Unmarketable Title.
>
> . . . .
>
> 5.    The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
>     (a)    the occupancy, use, or enjoyment of the Land;
>     (b)    the character, dimensions, or location of any improvement erected on the Land;

2

> (c)    the subdivision of land; or
> (d)    environmental protection
> If a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.

CP at 28 (some capitalization omitted).

The title insurance policy defines several terms. Specifically, "Title" is defined as: "The estate or interest described in Schedule A." CP at 30. "Unmarketable Title" is defined as: "Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title to be released from the obligation to purchase, lease, or lend if there is a contractual condition requiring the delivery of marketable title." CP at 30.

Schedule A of the policy provided that HDH was the insured for a fee simple interest in the property. Schedule A referenced the following addresses for the property: "216 E Roanoke St & 217 Scott St, Centralia, WA 98531." CP at 95 (some capitalization omitted). The property was described as:

> Tracts A and B of Boundary Line Adjustment BLA-2017 0036 recorded in Volume 3 of boundary line adjustments, page 142, under Auditor's File No. 3462824, being lots 2 and 5, block 1 of Horner's Subdivision of a portion of lots 1 and 2, August Sawalls addition to Centralia as recorded in Volume 4 of Plats, page 87.

CP at 34 (some capitalization omitted).

Schedule B of the policy provided exceptions from coverage. In addition to general exceptions, Schedule B listed five "special exceptions." CP at 35 (capitalization omitted). Relevant here is Special Exception Number 5, which states:

> This policy does not insure against loss or damage by reason of the (and [Stewart Title] will not pay costs, attorney's fees or expenses), which arise by reason of:
>
>     . . . .

No. 58677-1-II

> 5.  Matters disclosed by a record of survey
> Recorded    : OCTOBER 30, 2020
> Auditor's No. : 3535886

CP at 35-36.

HDH closed on the property on May 21, 2021. Following closing, HDH applied to the City of Centralia (City) for permits to develop the lots. The City informed HDH that the two lots had been merged into a single lot. HDH then discovered that prior to its purchase, the sellers had consolidated the two lots into a single lot. The consolidation was publicly recorded by way of a "Boundary Line Adjustment/Lot Consolidation" (Boundary Line Adjustment), Auditor No. 3535886. CP at 103.

The Boundary Line Adjustment provided an original legal description of the lots, along with a new legal description of the consolidated lots:

ORIGINAL LEGAL DESCRIPTIONS:

. . . Tract A of City of Centralia Boundary Line Adjustment Number BLA – 2017 0036 as recorded in Book 3 of Boundary Line Adjustment Maps at page 192 under Auditor's File Number 3462824, records of Lewis County, Washington.

. . . Tract B of City of Centralia Boundary Line Adjustment Number BLA – 2017 0036 as recorded in Book 3 of Boundary Line Adjustment Maps at page 192 under Auditor's File Number 3462824, records of Lewis County, Washington.

NEW LEGAL DESCRIPTION:

Parcel A of City of Centralia Boundary Line Adjustment/Lot Consolidation Number 2020 0181, Records of Lewis County, Washington.

Also described as Tract A and Tract B of City of Centralia Boundary Line Adjustment BLA – 2017 0036 as recorded in Book 3 of Boundary Line Adjustment Maps at page 192 under Auditor's File Number 3242824, records of Lewis County, Washington.

4

CP at 103 (some capitalization omitted). The Boundary Line Adjustment was recorded on October 30, 2020.

After learning of the Boundary Line Adjustment, HDH submitted a claim to Stewart Title "for all loss and damage it had or would sustain as a result of the [Boundary Line Adjustment]." CP at 67. Stewart Title denied the claim. HDH then applied to the City to subdivide the property back into two lots. According to HDH, it incurred "substantial expense preparing and submitting the application to subdivide the property" and it was "delayed in its ability to develop and sell the two lots, which caused [HDH] to incur substantial additional loss and expense." CP at 67.

B.    PROCEDURAL HISTORY

In August 2022, HDH filed a complaint in superior court. The complaint stated that HDH "sustained or incurred loss or damage by reason of title being vested other than as stated in Schedule A." CP at 3. Specifically, HDH alleged (1) breach of contract; (2) unreasonable denial of a claim for coverage under RCW 48.30.015; and (3) bad faith, among other causes of action to be proved following discovery. HDH claimed at least $100,000 in damages.

In its answer to HDH's complaint, Stewart Title denied HDH's claims and stated, "The Insurance Policy speaks for itself." CP at 8. Stewart Title raised several affirmative defenses, including that HDH failed to state a claim upon which relief can be granted.

In July 2023, Stewart Title moved for a judgment on the pleadings pursuant to CR 12(c). In support of its motion, Stewart Title also submitted a copy of the title insurance policy.

HDH responded to Stewart Title's motion and attached declarations from Kellen Mangan, managing member of HDH, and Kevin Bluhm, the licensed professional land surveyor who created the Boundary Line Adjustment. In its response, HDH argued that Stewart Title's motion should

be denied because HDH sustained loss or damage by reason of a "'Covered Risk.'" CP at 50.

HDH also alleged for the first time that the policy's Covered Risk 3 (unmarketable title) and

Covered Risk 5 (the enforcement of any law or ordinance relating to the use or subdivision of the

land) also applied.

In reply, Stewart Title moved to strike the declarations that HDH submitted in its response.

Stewart Title argued that the declarations contained testimony and exhibits outside the scope of

the CR 12(c) pleadings.

In August 2023, after hearing argument on the motion, the superior court granted Stewart

Title's motion for judgment on the pleadings. The superior court orally ruled:

> I'm going to grant the Motion for Judgment on the Pleadings. . . . I think that the Schedule A, the description of what was being sold is covered by that. But even if it is not, even if it is not covered, I think the exclusion under Schedule B takes care of that. It's not what the insured understood. It's not what the parties understood. It's what the contract says. By listing the specific auditor's number, that tells the insured you should be looking at that.
>
>     . . . I think the reasonable insured would look at the document that is excluded that is specifically referred to in the policy, so that's what happened here.

Verbatim Rep. of Proc. (VRP) at 3.

The superior court did not immediately enter a written order. HDH then filed a motion for

reconsideration of the superior court's oral decision. HDH merely reiterated the same arguments

as it had in its response to Stewart Title's CR 12(c) motion and did not identify the grounds upon

which it sought reconsideration.

The superior court denied HDH's motion for reconsideration. The order denying the

motion for reconsideration stated: "The court concludes HDH cannot prove any set of facts

6

consistent with its Complaint that would justify recovery on any of the causes of action pled therein." CP at 150.

Then, in September 2023, the superior court entered a written judgment of its oral ruling granting Stewart Title's motion for a judgment on the pleadings. The judgment stated that the superior court considered the declarations of Mangan and Bluhm in addition to the pleadings upon which the motion for judgment on the pleadings was based.

HDH appeals.

## ANALYSIS

HDH argues that the superior court erred when it granted Stewart Title's motion for a judgment on the pleadings and when it denied HDH's motion for reconsideration. We disagree.

A.    STANDARD OF REVIEW

1.    Motion for Judgment on the Pleadings

CR 12(c) provides, "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." CR 12(c) motions are nearly identical to CR 12(b)(6) motions to dismiss for failure to state a claim. *P.E. Sys., LLC v. CPI Corp.*, 176 Wn.2d 198, 203, 289 P.3d 638 (2012). The only "difference between these two motions is timing: a CR 12(b)(6) motion is made after the complaint but before the answer; a CR 12(c) motion is made after the pleadings are closed." *Id.*

The purpose of CR 12(c) is "is to 'determine if a plaintiff can prove any set of facts that would justify relief.'" *Zurich Servs. Corp. v. Gene Mace Constr., LLC*, 26 Wn. App. 2d 10, 19, 526 P.3d 46 (2023) (quoting *P.E. Sys.*, 176 Wn.2d at 203). Dismissal under CR 12(c) is appropriate only when the plaintiff cannot prove facts that would justify recovery. *P.E. Sys.*, 176 Wn.2d at

210. "Factual allegations contained in the complaint are accepted as true." *Silver v. Rudeen Mgmt. Co.*, 197 Wn.2d 535, 542, 484 P.3d 1251 (2021).

Generally, courts may only consider the factual allegations made in the complaint. *Zurich Servs. Corp.*, 26 Wn. App. 2d at 20. However, "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." CR 10(c);[1] *accord Zurich Servs. Corp.*, 26 Wn. App. 2d at 20 (stating courts may also consider "documents incorporated into the pleadings, including an instrument such as an operative contract 'the authenticity of which is not contested'" (quoting *P.E. Sys.*, 176 Wn.2d at 205)). This includes documents "whose contents are alleged but are not physically attached to the pleadings." *Zurich Servs. Corp.*, 26 Wn. App. 2d at 20.

Courts may not consider exhibits that fall outside the definition of "written instrument," such as affidavits or declarations, which are considered extrinsic evidence. *P.E. Sys.*, 176 Wn.2d at 205. If a court admits and considers extrinsic evidence, a motion for a judgment on the pleadings must be converted into a CR 56 motion for summary judgment. CR 12(c); *P.E. Sys.*, 176 Wn.2d at 206. "In that event, all parties must be given reasonable opportunity to present all material made pertinent to such a motion by CR 56." *Zurich Servs. Corp.*, 26 Wn. App. 2d at 21.

Nevertheless, even if matters outside the pleadings are presented, a court may still determine "that no matter what facts are proved within the context of the claim, the plaintiffs would not be entitled to relief," and "the motion remains one under CR 12." *Id.* at 20. In such cases, the "'basic operative facts are undisputed'" and whatever outside evidence proven would be

---

[1] CR 10(c) provides in full: "Adoption by Reference; Exhibits. Statements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion. A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."

immaterial. *Id.* (internal quotation marks omitted) (quoting *Trujillo v. Nw. Tr. Servs., Inc.*, 183 Wn.2d 820, 830 n.7, 355 P.3d 1100 (2015)). We review a dismissal under CR 12(c) de novo. *Id.* at 19.

### 2. Motion for Reconsideration

CR 59 provides that on the motion of an aggrieved party, an order may be vacated, and reconsideration granted, for one of several causes, including irregularity in proceedings, misconduct, newly discovered evidence, or errors in law, among other reasons. CR 59(a). We review the denial of a motion for reconsideration under an abuse of discretion standard. *Dynamic Res., Inc. v. Dep't of Revenue*, 21 Wn. App. 2d 814, 824, 508 P.3d 680 (2022). "A trial court abuses its discretion if its decision is 'manifestly unreasonable or exercised on untenable grounds or for untenable reasons.'" *Id.* (quoting *McCoy v. Kent Nursery, Inc.*, 163 Wn. App. 744, 758, 260 P.3d 967 (2011), *review denied*, 173 Wn.2d 1029 (2012)).

### B. TITLE INSURANCE COVERAGE

HDH argues that it incurred loss by reason of a covered risk in its title insurance policy. Additionally, HDH argues that "Special Exception No. 5" does not apply. Br. of Appellant at 6.

### 1. Legal Principles

"Title, in the context of real property, is defined as 'the means whereby the owner of lands has the just possession of his property.'" *Schwab v. City of Seattle*, 64 Wn. App. 742, 749, 826 P.2d 1089 (1992) (quoting BLACK'S LAW DICTIONARY 1331 (5th ed. 1979)). Fundamental attributes of property ownership include the right to possess the property, to exclude others, and to dispose of the property as the owner sees fit. *Manufactured Hous. Cmtys. of Wash. v. State*, 142 Wn.2d 347, 364, 13 P.3d 183 (2000), *abrogated on other grounds by Chong Yim v. City of Seattle*,

194 Wn.2d 651, 451 P.3d 675 (2019). A title insurance policy is "any written instrument, contract, or guarantee by means of which title insurance liability is assumed." RCW 48.29.010(3)(j).

We interpret insurance policy provisions de novo. *Gardens Condo. v. Farmers Ins. Exch.*, 2 Wn.3d 832, 838, 544 P.3d 499 (2024). "Courts construe insurance policies as a whole, giving the language 'a fair, reasonable, and sensible construction' as would be given by an average person purchasing insurance." *Id.* at 839 (internal quotation marks omitted) (quoting *Seattle Tunnel Partners v. Great Lakes Reinsurance (UK) PLC*, 200 Wn.2d 315, 321, 516 P.3d 796 (2022)).

"'The insured bears the burden of showing that coverage exists; the insurer, that an exclusion applies.'" *Hill & Stout, PLLC v. Mut. of Enumclaw Ins. Co.*, 200 Wn.2d 208, 218, 515 P.3d 525 (2022) (quoting *Mut. of Enumclaw Ins. Co. v. T&G Constr., Inc.*, 165 Wn.2d 255, 268, 199 P.3d 376 (2008)). The "duty to indemnify exists only if the policy *actually covers* the insured's liability." *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d 398, 404, 229 P.3d 693 (2010) (emphasis in original). Exclusionary clauses are strictly construed against the insurer. *Id.* at 406.

Undefined terms in an insurance policy are given their plain and ordinary meaning, and courts may look to the dictionary for undefined terms. *Hill & Stout*, 200 Wn.2d at 218-19. Language is ambiguous when it is susceptible to two or more reasonable interpretations. *Id.* at 218. "Any ambiguity in an insurance policy is construed in favor of the insured." *Id.* at 218-19. However, "[a] policy with clear and unambiguous language is to be enforced as written and without modification." *Gardens Condo.*, 2 Wn.3d at 839.

The Washington Survey Recording Act, chapter 58.09 RCW, "provide[s] a method for preserving evidence of land surveys by establishing standards and procedures . . . for recording a

public record of the surveys." RCW 58.09.010. A survey is "the locating and monumenting in accordance with sound principles of land surveying by or under the supervision of a licensed land surveyor, of points or lines which define the exterior boundary or boundaries common to two or more ownerships or which reestablish or restore general land office corners." RCW 58.09.020(3).

"After making a survey in conformity with sound principles of land surveying, a land surveyor may file a record of survey with the county auditor in the county or counties wherein the lands surveyed are situated." RCW 58.09.040. A record of survey may include "maps, plats, reports, descriptions, or other documentary evidence" so long as it complies with the provisions of chapter 58.09 RCW. RCW 58.09.030.

> Under the Centralia Municipal Code (CMC), a "boundary line adjustment" means
>
> a division of land for the purpose of alteration by minor adjustment of boundary lines, between platted or unplatted lots or parcels or both, which does not create an additional lot, tract, parcel, building site, or division, nor creates any lot, tract, parcel, building site, or division which contains insufficient area or dimension to meet the minimum requirements for width or area for a building site. Boundary line adjustments are to be used to consolidate lots and resolve minor boundary line problems between two parcels of land, such as discrepancies found as a result of a boundary survey. Boundary line changes that alter the underlying plat pattern such as changing the general direction of lot lines or lot access are not boundary line adjustments.

CMC 19.04.020.F.

2. Coverage and Special Exception Number 5

HDH argues that it met its burden of demonstrating coverage under its title insurance policy and that the policy insured title to two separate tracts of land. Specifically, HDH contends that "Schedule A" of the policy "unambiguously describes the property . . . as two separate tracts." Br. of Appellant at 24.

HDH also argues that Special Exception Number 5 does not apply because there is no "'Record of Survey'" under Lewis County Auditor Number 3535886. Br. of Appellant at 34. Furthermore, HDH claims that Stewart Title "misleadingly described and never provided [HDH] with a copy of the 'Record of Survey' recorded under Lewis County Auditor's Number 3535886," making Stewart Title's conduct procedurally unconscionable and Stewart Title should be estopped from enforcing the exception. Br. of Appellant at 34.

As a threshold matter, we review HDH's appeal under the CR 12(c) standard—that is, we consider only the factual allegations made in HDH's complaint, the pleadings, and any written instruments attached to the pleadings. CR 10(c); 12(c); *Zurich Servs. Corp.*, 26 Wn. App. 2d at 20. Here, because the superior court considered declarations submitted by HDH, the superior court should have converted Stewart Title's motion for a judgment on the pleadings into a CR 56 motion for summary judgment. CR 12(c); CR 56; *Zurich Servs. Corp.*, 26 Wn. App. 2d at 21. However, while the superior court stated that it considered extrinsic evidence in its written judgment, the record shows that the superior court's ruling actually hinged on the policy alone. The superior court stated:

> I think that the Schedule A, the description of what was being sold is covered by that. But even if it is not, even if it is not covered, I think the exclusion under Schedule B takes care of that. It's not what the insured understood. It's not what the parties understood. *It's what the contract says*. By listing the specific auditor's number, that tells the insured you should be looking at that.
>
> . . . I think the reasonable insured would look at the document that is excluded that is specifically referred to in the policy.

VRP at 3 (emphasis added).

The parties do not dispute the validity of the title insurance policy. Where it is clear that the basic operative facts are undisputed, and any additional evidence presented under CR 56 would be immaterial, the motion remains one under CR 12. *Zurich Servs. Corp.*, 26 Wn. App. 2d at 20. Thus, this opinion assumes a CR 12(c) standard of review.

The issue before this court is whether HDH's purported losses arising from the consolidation of two adjacent lots, which involved a boundary line adjustment, are covered by the title insurance policy. Because there can be no coverage if a loss is excluded, we first look to the policy's exceptions (i.e., what is explicitly *excluded* from coverage).

### a. No coverage under the policy language

The title insurance policy here clearly states that covered risks are "subject to the exclusions from coverage, the exceptions from coverage contained in Schedule B." CP at 28 (some capitalization omitted). Schedule B states: "This policy does not insure against loss or damage . . . which arise by reason of" several enumerated exceptions. CP at 35. Schedule B then sets forth two categories of exceptions from coverage: general exceptions and special exceptions. Special Exception Number 5 is the relevant exception here.

Special Exception Number 5 identifies an exception for "[m]atters disclosed by a record of survey" recorded on October 30, 2020 under Auditor's recording number 3535886. CP at 36. With regard to the document listed in Special Exception Number 5—a "record of survey" recorded October 30, 2020, with Auditor's Number 3535886—the recorded document explicitly states it is a "Boundary Line Adjustment/Lot Consolidation." CP at 103. The document also shows the boundary lines of the property. Furthermore, the document provides a "new legal description" of the property:

> Parcel A of City of Centralia Boundary Line Adjustment/Lot Consolidation Number 2020 0181, Records of Lewis County, Washington.
>
> Also described as Tract A and Tract B of City of Centralia Boundary Line Adjustment BLA – 2017 0036 as recorded in Book 3 of Boundary Line Adjustment Maps at page 192 under Auditor's File Number 3242824, records of Lewis County, Washington.

CP at 103.

Here, the policy language unambiguously excludes coverage for losses or damages arising from the Boundary Line Adjustment recorded on October 30, 2020 under Auditor's recording number 3535886. "A policy with clear and unambiguous language is to be enforced as written and without modification." *Gardens Condo.*, 2 Wn.3d at 839.

While Stewart Title may not have provided a copy of the Boundary Line Adjustment to HDH, the document was reasonably available for HDH to review because the recording date and number was clearly identified and the document was publicly recorded with the Lewis County Auditor's Office. *Mattingly v. Palmer Ridge Homes, LLC*, 157 Wn. App. 376, 392, 238 P.3d 505 (2010). Moreover, there were only *five* special exceptions listed in Schedule B; it was not a multi-page laundry list filled with dense, boilerplate language.

HDH argues that Special Exception Number 5 does not apply because "there is no 'Record of Survey' recorded under the specified Lewis County Auditor's Number 3535886"; rather, because only the Boundary Line Adjustment is recorded, a "record of survey" does not exist. Br. of Appellant at 34. HDH asserts that the purpose of the Boundary Line Adjustment is to change boundaries, which is substantially different from the purpose and legal effect of a record of survey. Thus, HDH argues, "Special Exception No. 5 purports to describe and incorporate by reference a

document that literally does not exist" and "[i]t therefore excludes nothing." Br. of Appellant at 36. This argument is unpersuasive.

Under the Washington Survey Recording Act, a survey is "the locating . . . in accordance with sound principles of land surveying by or under the supervision of a licensed land surveyor, of points or lines which define the exterior boundary or boundaries common to two or more ownerships or which reestablish or restore general land office corners." RCW 58.09.020(3). A survey may include "maps, plats, reports, descriptions, or other documentary evidence." RCW 58.09.030. A land surveyor then "may file a *record* of survey with the county auditor." RCW 58.09.040 (emphasis added). Thus, a "record of survey" is not a *specific* document; it could be any number of documents, so long as it complies with the Survey Recording Act.

A "boundary line adjustment" is "a division of land for the purpose of alteration by minor adjustment of boundary lines, between platted or unplatted lots or parcels or both. . . . Boundary line adjustments are to be used to consolidate lots and resolve minor boundary line problems between two parcels of land, such as discrepancies found as a result of a boundary survey." CMC 19.04.020.F. Therefore, a boundary line adjustment locates "points or lines which define the exterior boundary or boundaries common to two or more ownerships or which reestablish or restore general land office corners." RCW 58.09.020(3). Here, the Boundary Line Adjustment showing the consolidation of two adjacent lots was publicly recorded on October 30, 2020. Thus, the Boundary Line Adjustment in this case is *a record of survey*.

This notion is bolstered by the way in which Special Exception Number 5 describes "record of survey." According to HDH, Special Exception Number 5 states, "'Matters disclosed by Record of Survey,'" with "'Record of Survey'" capitalized and implying that it is a *specific* document. Br.

of Appellant at 33. However, upon review of the record, Special Exception Number 5 in the policy actually states: "Matters disclosed by *a record of survey*." CP at 36 (emphasis added). The way in which "a record of survey" is referenced in the policy suggests the document is *not* a specific document; rather, it suggests a survey—whether that is a map, plat, or boundary line adjustment—that has been recorded.

HDH cites no authority for the proposition that there is a distinction between a survey locating existing boundaries versus a survey that changes boundaries, at least for the purposes of establishing a record of survey. HDH cites to *Thein v. Burrows*[2] to argue that a record of survey cannot change boundaries. However, in *Thein*, at issue was *two competing surveys* and whether one of those surveys was erroneously conducted. *Id.* at 761-62. Here, HDH does not argue that the boundaries provided on the Boundary Line Adjustment were *incorrect* nor does it dispute the methodology employed to create the Boundary Line Adjustment. Therefore, *Thein* is inapposite.

### b. Procedural unconscionability

HDH next argues that Stewart Title's failure to provide HDH with a copy of the Boundary Line Adjustment renders enforcement of Special Exception Number 5 "procedurally unconscionable." Br. of Appellant at 37. Specifically, HDH contends that it was deprived of "the opportunity to understand what matters [Stewart Title] was purporting to refer to and exclude," resulting "in blatant unfairness to [HDH] and deprived it of meaningful choice." Br. of Appellant at 39. We disagree.

---

[2] 13 Wn. App. 761, 763, 537 P.2d 1064 (1975).

Courts assess procedural unconscionability based on the totality of the circumstances. *Mattingly*, 157 Wn. App. at 388. Courts will consider "'(1) the manner in which the parties entered into the contract, (2) whether the parties had a reasonable opportunity to understand the terms, and (3) whether the terms were hidden in a maze of fine print.'" *Id.* (internal quotation marks omitted) (quoting *Torgerson v. One Lincoln Tower, LLC*, 166 Wn.2d 510, 519, 210 P.3d 318 (2009)). The crux of procedural unconscionability is whether a party lacked meaningful choice. *Id.* at 388-89.

Here, HDH engaged Stewart Title for a title insurance policy. The entire policy is only 12 pages long, and the disputed interpretations arise only on six of those pages—the pages that provide "Covered Risks," and then Schedule A and Schedule B. Both Schedule A and Schedule B are concise, brief documents. Schedule A provides a description of the property insured:

> Tracts A and B of Boundary Line Adjustment BLA-2017 0036 recorded in Volume 3 of boundary line adjustments, page 142, under Auditor's File No. 3462824, being lots 2 and 5, block 1 of Horner's Subdivision of a portion of lots 1 and 2, August Sawalls addition to Centralia as recorded in Volume 4 of Plats, page 87.

CP at 34. Schedule B lists nine general exceptions and five special exceptions. The terms are not hidden in a maze of fine print and nothing in the record or HDH's argument suggests that HDH did not have a reasonable opportunity to understand the terms or that it lacked meaningful choice based on the language of the policy.

First, Schedule A's description of the property insured is not incorrect—while not identical to the new legal description listed in the Boundary Line Adjustment, the property description largely follows the new legal description. The record shows that prior to the consolidation of the lots, the property was referred to individually as "Tract A" and "Tract B," not as "Tract A and

Tract B" or "Tracts A and B."[3] Moreover, the description of land in a title insurance policy is for the purpose of identifying the land; not "'for the purpose of limiting the insurance protection.'" *Shotwell v. Transamerica Title Ins. Co.*, 91 Wn.2d 161, 169, 588 P.2d 208 (1978) (quoting *San Jacinto Title Guar. Co. v. Lemmon*, 417 S.W.2d 429, 431-32 (Tex. Civ. App. 1967)). Schedule A properly identified the property covered by the policy.

Second, and as discussed above, there were only *five* special exceptions listed in Schedule B; Schedule B was not a multi-page laundry list filled with dense, boilerplate language. Schedule B explicitly listed specific survey documents within the exceptions to coverage under the policy. Those documents were clearly identified by recording date and auditor's recording number. Even if HDH did not know the content of those documents, it was aware that those documents affected coverage under the policy. Based on the record, it does not appear that that Stewart Title intentionally misled HDH—indeed, the contract was succinct and it clearly stated the exceptions to coverage in a brief and detailed list. Thus, contrary to HDH's assertion, enforcing Special Exception Number 5 is not procedurally unconscionable.

        c.     Equitable estoppel

Finally, HDH argues that Stewart Title should be "equitably estopped from asserting Special Exception No. 5 excludes [HDH]'s claim" because Stewart Title misled HDH by referring to the Boundary Line Adjustment as a "'Record of Survey.'" Br. of Appellant at 43, 44. As

---

[3] We note that the descriptions of the property in Exhibit A of the purchase and sale agreement appear to have been modified. Indeed, on the page purporting to describe Tract A, it states: "*Tracts A*" and was followed by text that was whited out. CP at 85 (emphasis added). It would seem the apparent modification should at least have given rise to a request for clarification on HDH's part.

discussed above, Stewart Title did not mislead HDH by referring to the document as a "Record of Survey." Therefore, HDH's equitable estoppel claim fails.

Because the title insurance policy unambiguously excludes coverage for losses or damages arising from the Boundary Line Adjustment recorded on October 30, 2020 under Auditor's recording number 3535886, HDH cannot prove any set of facts that would justify relief. *Zurich Servs. Corp.*, 26 Wn. App. 2d at 19; CR 12(c). Further, Stewart Title did not mislead HDH in identifying the recorded Boundary Line Adjustment. As such, we do not address HDH's arguments that its losses and damages fall within covered risks.

Accordingly, we hold that the superior court did not err in granting Stewart Title's motion for a judgment on the pleadings. Because the superior court did not err in granting Stewart Title's motion, it necessarily did not err in denying HDH's motion for reconsideration.

## ATTORNEY FEES ON APPEAL

HDH requests attorney fees and costs. We may award attorney fees and expenses to a party "[i]f applicable law grants to a party the right to recover." RAP 18.1(a).

HDH cites to *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 52, 811 P.2d 673 (1991), in support of its request for attorney fees. In *Olympic S.S. Co.*, the Washington Supreme Court stated that an insured has a right to "recoup attorney fees that it incurs because an insurer refuses to defend or pay the justified action or claim of the insured." *Id.* As discussed above, HDH did not have a justified claim and is not the prevailing party. Therefore, we decline to award attorney fees to HDH.

We affirm.

19

No. 58677-1-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Glasgow, J.

_____
Veljacic, A.C.J.